J-A22010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.C.F., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| P.B.F. | : | No. 1564 MDA 2019 |

Appeal from the Order Entered August 29, 2019
In the Court of Common Pleas of York County Civil Division at No(s):
04576-SA-2017

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                **FILED OCTOBER 02, 2020**

J.C.F. (Mother) appeals from the order entered in the underlying child and spousal support proceeding.[1]   Mother challenges the trial court's determination as to her earning capacity.  Upon review, we affirm.

Mother and P.B.F. (Father) were married for approximately 10 years, and are the parents of three minor children.  Father is employed at an insurance agency, where he has worked for 15 years; for the past 13 years, Father's salary has been 100% commission-based.  N.T., 8/19/19, at 41, 44.  Approximately six months into the parties' marriage, in January 2008, Mother became a registered nurse.  *Id.* at 26.  However, following the birth of the

---

[1] Mother has separately appealed, at 266 MDA 2020, from the trial court's order adopting as final the report and recommendation of the Master relative to the parties' equitable distribution claims.  We address and dispose of that appeal in a separate memorandum.

parties' second child in 2012, Mother stopped working as a nurse to care full-time for the parties' children. In September 2017, the parties separated.

The trial court recounted the ensuing procedural history:

On September 17, 2017, [Mother] filed a Complaint for Support seeking child and spousal support. A DRO Conference was held and an Order was entered on October 24, 2017, which determined [Father's] monthly support payments. [Father] requested a de novo review on November 13, 2017 of the Support Order. On February 28, 2018, a Special Support Hearing was held which resulted in the Court determining that [Mother] was entitled to spousal support, as well as that, under the Nurturing Parent Doctrine,[2] [Mother] was relieved of any earning capacity until the youngest child started full day kindergarten or first grade. Additionally, during the Special Support Hearing, the Court ordered that [Mother] was to be held to the earning capacity calculated by the Domestic Relations Office after the Nurturing Parent Doctrine ceased to apply. [Father] appealed this Order to the Superior Court, but the parties were able to reach an agreement resolving all issues raised on appeal. That agreement was entered as an Order of Court on April 19, 2018. [Mother] then filed a Petition for Modification on June 20, 2018, which was dismissed by the Court. [Mother] filed a second Petition for Modification on May 23, 2019. A DRO Conference [w]as held resulting in an Order which increased the monthly support payments. A de novo review was requested, and a Special Support Hearing was then held on August 19, 2019.

Trial Court Opinion, 11/20/19, at 1-2.

On August 29, 2019, the trial court ordered Father to pay $6,325.40 per month in total support, allocated $2,725 per month in child support,

---

[2] Both parents have an equal duty to support their children. **Yerkes v. Yerkes**, 824 A.2d 1169, 1171 (Pa. 2003). Under the nurturing parent doctrine, the care a parent provides for the parties' children in the home may excuse the parent from contributing financial support, and the full earning capacity of that parent need not be considered in calculating child support. **Kraisinger v. Kraisinger**, 928 A.2d 33, 342 (Pa. Super. 2007).

$3,095.40 per month in spousal support, and $505 per month in arrears. Mother filed a timely notice of appeal on September 23, 2019. Both the trial court and Mother have complied with Rule of Appellate Procedure 1925.

Before addressing Mother's substantive issues, we first address the appealability of the August 29, 2019 order. Questions concerning appealability go to the jurisdiction of the court to hear the appeal, and may be raised *sua sponte*. **See Fried v. Fried**, 501 A.2d 211, 212-13 (Pa. 1985).

Here, the order at issue is an allocated support order, *i.e.*, it apportions a separate amount for child support and a separate amount for spousal support. "[During the pendency of a divorce action,] the portion of a trial court order attributable to child support is final and immediately appealable; however, the portions of an order allocated to spousal support is interlocutory." **See Hrinkevich v. Hrinkevich**, 676 A.2d 237, 239 (Pa. Super. 1996).

> A spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved. The rationale behind this rule is that, for purposes of judicial efficiency, in the event that an initial award of interim relief is granted in error, the court has the power to make adjustments in the final settlement via the equitable distribution of marital property. Thus, when all economic matters involved in a divorce are resolved, any support order can be reviewed and corrected when the court finalizes the equitable division of the property.

**Capuano v. Capuano**, 823 A.2d 995, 998–99 (Pa. Super. 2003) (citations omitted).

Based on the forgoing, the child support portion of the order is appealable and properly before us. However, we must ascertain whether there is a pending divorce action to determine the appealability of the spousal support portion of the order.

The record reveals that when Mother filed her notice of appeal on September 23, 2019, the parties' divorce action was pending. Nevertheless, the parties were subsequently divorced by decree on February 21, 2020, such that the spousal support order is now ripe for appellate review. Consistent with our policy of favoring judicial efficiency — as stated above in **Capuano** — we overlook Mother's procedural misstep in filing her notice of appeal prior to the entry of a final divorce decree, and proceed to the merits of Mother's claims.

Mother raises two issues regarding the trial court's assignment and calculation of her earning capacity. She questions:

I.    Did the [t]rial [c]ourt abuse its discretion and/or make an error of law when it assigned an earning capacity to [Mother] in excess of her actual earnings?

II.   Did the [t]rial [c]ourt abuse its discretion and/or make an error of law when it admitted into evidence documents alleged to have been obtained on the internet relative to the earning capacity of [Mother]?

Mother's Brief at 4 (reordered).

Our standard of review is well-settled:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion

- 4 -

afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Kimock v. Jones**, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

In her first issue, Mother argues that the trial court abused its discretion when it assigned her an earning capacity in excess of her actual earnings. Mother's Brief at 14-21. Mother accurately states:

The [t]rial [c]ourt assigned [Mother] an earning capacity of $53,500 **determined previously in a February 28, 2018 Support Order** by a prior Court. However, it acknowledged that her current actual earnings are $35,500 by calculating her hourly wage of $18.15 per hour for 7.5 hours per day times 5 days over 52 weeks that she could potentially work, including the summer months.

**Id.** at 16 (emphasis added, citations omitted). Mother emphasizes that she has not voluntarily reduced her income by accepting a lower paying position and has applied to 10 employers "within her field with no realistic job offers." **Id.** at 18. Moreover, because she has been out of the workforce for over seven years and is the primary caretaker of the parties' children, Mother contends that "she would likely be unable to advance within her field or work at any time except during the day Monday through Friday because she has primary custody of the parties' three [ ] children and the child care responsibilities that come with that." **Id.** at 20. Accordingly, Mother claims

the trial court abused its discretion in assigning her an annual earning capacity of $53,500.

"A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." ***Gephart v. Gephart***, 764 A.2d 613, 615 (Pa. Super 2000). Past earnings alone are not sufficient to support a determination of earning capacity without corroborating evidence that the party still has the capacity to earn that amount. ***See D.H. v. R.H.,*** 900 A.2d 922 (Pa. Super. 2006) (holding trial court erred in determining earning capacity based solely upon party's most recent tax return).

Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4), addressing earning capacity, states:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

Upon review, we are not persuaded by Mother's argument assailing the prior judicial determination of her $53,500 annual earning capacity. Pennsylvania Rule of Appellate Procedure 903 requires that a party file an appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). As the 30-day period is jurisdictional in nature, it must be strictly construed. **Sass v. AmTrust Bank**, 74 A.3d 1054, 1063 (Pa. Super. 2013) ("Our Courts have reaffirmed on countless occasions that timeliness is jurisdictional, as an untimely appeal divests this Court of jurisdiction to hear the merits of the case.").

The $53,500 earning capacity Mother challenges was assigned following a Special Support Hearing on February 28, 2018. **See** Trial Court Opinion, 11/20/19, at 3 ("The Court did not assign an earning capacity to [Mother], but rather held her to the earning capacity determined in the February 28, 2018 Order by a prior Court."); **see also** N.T., 8/19/19, at Pl. Ex. 8; N.T., 8/19/19, at Df. Ex. 4. Pursuant to Pa.R.C.P. 1910.12(f), Mother had 20 days from the entry of the February 28, 2018 order to file exceptions, but did not do so. **See also** Pa.R.C.P. 1920.55-2(b) ("Matters not covered by exceptions are deemed waived unless, prior to the entry of the final decree, leave is granted to file exceptions raising those matters.").

Although we recognize that "[a] party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order," the notice of appeal must indicate with specificity which orders are being appealed. Pa.R.A.P. 341, cmt.; **see also K.H. v. J.R.**, 826

- 7 -

A.2d 863, 869 (Pa. 2003). Here, in her notice of appeal, Mother challenges the August 29, 2019 support order, making no reference to the February 28, 2018 support order. As noted by the trial court:

> On February 28, 2018, a Special Support Hearing was held which resulted in the Court determining that [Mother] was entitled to spousal support, as well as that, under the Nurturing Parent Doctrine, [Mother] was relieved of any earning capacity until the youngest child started full day kindergarten or first grade. Additionally, during the Special Support Hearing, the Court ordered that [Mother] was to be held to the [$53,500 annual] earning capacity calculated by the Domestic Relations Office after the Nurturing Parent Doctrine ceased to apply.

Trial Court Opinion, 11/20/19, at 1-2. By failing to appeal from the February 28, 2018 order, Mother cannot challenge it now in her appeal from the August 29, 2019 order. Accordingly, we lack jurisdiction to review Mother's challenge to the judicial determination of her earning capacity from February 2018.[3]

In her second issue, Mother claims the trial court erred when it admitted a 40-page exhibit compiled by Father based on internet research he conducted on the employment website, Glassdoor.com. Mother's Brief at 12. The exhibit also contained a comparison of salaries and statistics for registered nurses obtained from the U.S. Bureau of Labor Statistics. *Id.* According to Mother,

---

[3] We further note that the trial court did not blindly apply the prior $53,500 earning capacity, but rather permitted Mother to present evidence of any change in circumstance. *See DeMasi v. DeMasi*, 530 A.2d 871, 877 (Pa. Super. 1987) (holding that a trial court could rely upon an earning capacity determination from a prior hearing). Had Mother persuaded the trial court at the August 19, 2019 hearing that her earning capacity had changed, the court would have assigned a different amount. Because Mother did not persuade the trial court, the court properly utilized the prior determination. *Id.*

she was "not privy to the websites or any detailed information regarding the material offered into evidence." *Id.* at 12-13. Mother contends that the evidence was hearsay, not subject to any of the hearsay exceptions, and was thus improper. Mother recognizes the trial court's "denial of its consideration of the internet evidence," but insists that the admission of the evidence was "prejudicial and an error of law." *Id.* at 13-14.

Regarding the admission of evidence, this Court has instructed:

Evidentiary rulings are committed to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law. In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party. Appellant must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the [trial] court.

*Whitaker v. Frankford Hospital*, 984 A.2d 512, 522 (Pa. Super. 2009) (citations and omitted).

Mother is not entitled to relief. As discussed above, Mother's earning capacity was judicially determined in February 2018, and Mother did not challenge the determination. Although the trial court in the underlying proceeding admitted documents obtained from the internet relative to Mother's earning capacity, it is undisputed that the evidence did not impact the court's determination of Mother's earning capacity. Rather, the trial court utilized the earning capacity previously determined by the trial court — and not challenged by Mother — from the earlier support hearing. Finally, we note that the trial court admitted the evidence over Mother's objection, explaining

it was "not going to look at it as the be-all and end-all of what [registered nurses] are making." N.T., 8/19/19, at 55. In sum, Mother's second issue is without merit because she has failed to demonstrate that the trial court's admission of Father's exhibit was harmful or reversible error. ***See Whitaker***, 19 A.3d at 1109.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2020