J-A18032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ELIZABETH A. SKINNER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAMES T. SKINNER | |
| Appellee | No. 2091 MDA 2013 |

Appeal from the Order Entered October 30, 2013
In the Court of Common Pleas of York County
Domestic Relations at No(s): 01886 SA 2006

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 26, 2014**

Elizabeth A. Skinner ("Mother") appeals from the order entered in the Court of Common Pleas of York County assessing her earning capacity to be $147,410.00.  Upon review, we affirm.

The facts and procedural history of this appeal are extensive and may be summarized as follows:  Father is retired from the military and is currently employed as an ROTC instructor at York City High School.  The parties do not dispute Father's earning capacity of $8,939.95 per month.  Mother is a physician with Well-Span Health, where she receives an annual salary of $65,000.00 to work part-time.

Mother and Father were married on September 9, 2000.  One child was born of the marriage, S.S. ("Child").  At the time of this appeal, child

was nine years old and in fourth grade. The parties separated in February of 2006, and divorced on July 14, 2009.

The court entered an initial support order on September 21, 2006, directing Father to pay Mother child support and alimony pendent lite ("APL"). The court entered a second support order on June 4, 2007, following a de novo support hearing at which the trial court determined Mother had an earning capacity of $85,000.00 per year.

Following a de novo hearing on December 8, 2009, the court entered a modified support order on February 17, 2010, directing Father to pay child support and APL. On March 11, 2010, the court modified this order by decreasing Father's child support payment to $1045.00 per month and his APL payment to $401.00 per month to reflect the parties' agreed-upon 50/50 custody arrangement.

Both parties appealed the March 11, 2010 order. The Superior Court upheld the decision of the trial court in a memorandum opinion on January 12, 2011, determining that the trial court did not abuse its discretion in holding Mother to a "part-time" earning capacity based on the circumstances of the parties. *Skinner v. Skinner*, No. 440 MDA 2010 and No. 501 MDA 2010, unpublished memorandum (Pa. Super. filed January 12, 2011). At the time, Mother was the primary caretaker of the child and the child attended a half-day kindergarten program.

On May 6, 2013, Father filed a petition to modify the support order. Father also filed a petition for an amendment of APL on May 8, 2013. A

support conference occurred on June 24, 2013, and on July 24, 2013, the court entered a child support order reflecting an increase in Mother's earning capacity. The conference officer assessed a full-time earning capacity for Mother of approximately $135,000.00. Mother requested a de novo hearing on August 5, 2013. The case was scheduled as a special support hearing due to the complexity of the matter and was heard before the court on October 15, 2013. On October 30, 2013, the trial court issued an order holding Mother to a full-time earning capacity of $147,410.00 per year and terminating APL. This timely appeal followed.

On appeal, Mother raises four issues:

1. Whether the trial court abused its discretion by overriding and/or misapplying the law allowing Father to request modification of support with a substantial change in circumstances on the same issues as previously decided by the trial court on February 17, 2010, and upheld by the Superior Court on January 12, 2011, in violation of collateral estoppel.

2. Whether the trial court abused its discretion by overriding and/or misapplying the law by imputing an earning capacity on plaintiff that is greater than one full-time position and is unreasonable given Mother's obligation as a parent.

3. Whether the trial court abused its discretion by overriding and/or misapplying the law by imputing an inflated earning capacity on Mother without adequate support on the record.

4. Whether the trial court abused its discretion by overriding and/or misapplying the law in the calculation of Mother's full-time earning capacity by using a straight hourly rate when plaintiff is not paid hourly, and cannot get paid the amount set by the trial court simply by working 40 hours per week.

Appellant's Brief, at 4.

Our standard and scope of review for an order of child support is well settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Kimock v. Jones*, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

Mother first argues that the trial court violated the doctrine of collateral estoppel when it permitted Father to request a modification of the support order because the issue had been previously litigated. It is well established that the doctrine of collateral estoppel will bar review of an issue only when the following four criteria are met:

> [1] The issue decided in a prior action must be identical to one presented in a later action; [2] the prior action must have resulted in a final judgment on the merits; [3] the party against whom collateral estoppel is asserted must have been a party to the prior action, or in privity with a party to the prior action; and [4] the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior action.

*Ewing v. Ewing*, 843 A.2d 1282, 1286 (Pa. Super. 2004). Furthermore, we observe that in Pennsylvania, child support orders are always modifiable if a

party can show a change of circumstances. *See Nicholson v. Combs*, 703 A.2d 407 (Pa. Super. 1997).

There is no dispute that three of the four elements in the above test for collateral estoppel are met in this matter. The earlier action resulted in a final judgment on the merits; Father was a party to the prior action; and Father had a full and fair opportunity to litigate the issues in the prior action. Whether collateral estoppel applies to bar review in this case ultimately turns on whether the issues presented in the two actions are identical.

In the earlier action, this Court affirmed the trial court's determination that Mother should be held to an earning capacity of $85,000.00 per year because, at that particular time, Mother was the primary custodial parent of a kindergarten-aged child. In the present matter, Mother and Father equally share physical custody of their child, who is now five years older and in the fourth grade. The issues in the two cases, while similar, are not identical. Because Father has demonstrated a change of circumstances that alters the issues at bar, the doctrine of collateral estoppel does not apply here. *See id.*

Mother's three remaining issues on appeal challenge the trial court's determination of her earning capacity. "Child and spousal support 'shall be awarded pursuant to statewide guidelines.' In determining the ability of an obligor to provide support, the guidelines 'place primary emphasis on the net incomes and earning capacities of the parties[.]'" *Mackay v. Mackay*, 984 A.2d 529, 537 (Pa. Super. 2009) (citing 23 Pa.C.S. § 4322(a)).

Pennsylvania Rule of Civil Procedure 1910.16(d)(4), addressing earning capacities, provides as follows:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. **Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity**. In order for an earning capacity to be assessed, the trier of fact must state reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4) (emphasis added). This Court defines earning capacity as "that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Mackay*, 984 A.2d at 537 (citing *Gephert v. Gephert*, 764 A.2d 613, 615 (Pa. Super. 2000)). We further note that,

> The trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses. A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P. 1910.1 *et seq.*, or abused its discretion in applying these Rules.

*Krankowski v. O'Neil*, 928 A.2d 284, 286-87 (Pa. Super. 2007) (citation omitted).

- 6 -

At the support hearing on October 15, 2013, Mother presented a vocational expert who testified about her earning capacity. The expert opined that Mother's earning capacity was approximately $67,000.00 per year based on her current employment contract. N.T. Hearing, 10/15/13, at 16. The expert further testified that Mother could realistically earn $140,460.00 based on her education and regional opportunities. *Id.* at 31. The expert agreed that Mother "should be considered experienced." *Id.* at 32.

Mother requested that the trial court use an hourly wage to determine her earning capacity. The trial court found this to be an appropriate procedure to calculate earning capacity, but concluded that the expert's opinion as to Mother's earning capacity lacked some credibility given Mother's circumstances and experience.[1] Accordingly, the trial court calculated Mother's earning capacity using an hourly wage derived from Mother's own reported earnings.[2] Moreover, the trial court determined a

---

[1] Mother is a board-certified physician who has continuing education credits and years of experience. According to the chart attached to the expert report, the expert suggested the trial court hold Mother to an hourly wage slightly above that of a Physician Assistant. Trial Court Opinion, 12/30/13, at 3.

[2] To calculate Mother's earning capacity at an hourly rate, the trial court added Mother's income for the last two years with her projected income for 2013. The total, $221,115.00 was divided by three to calculate her average annual income of $73,705.00. The court divided this amount by 52 weeks, and the weekly wage was then divided by 20, the number of hours Mother works per week. Mother's hourly wage was therefore calculated at $70.87
*(Footnote Continued Next Page)*

part-time earning capacity was no longer appropriate given the change in circumstances:

> Child is now in fourth (4th) grade, and the parties equally share custody. There was no credible evidence that Mother's ability to support Child on a part-time basis was related to Mother's focus on the quality of care for Child or need to provide care for Child . . . Mother is no longer the primary physical caretaker as she was at the time of the last hearing on December 8, 2009. Contrary to Mother's assertions, the circumstances have changed, and this court must consider the significant changes.

Trial Court Opinion, 10/28/12, at 6.

The trial court, as finder of fact, weighed the evidence and assessed the credibility of the witnesses. In doing so, the court considered Mother's age, education, training, work experience, earnings history and child care responsibilities as required by Pa.R.C.P. 1910.16-2(d)(4), and rejected the evidence Mother put forth on the issue. In calculating Mother's earning capacity, the trial court held Mother to an amount that she could realistically earn under the present circumstances.[3] **Mackay**, **supra**. Because this Court is not free to usurp the trial court's duty as the finder of fact, we will

---

*(Footnote Continued)* ─────────────

over the past three years. The trial court deemed this number appropriate to calculate what Mother could realistically earn if she worked a full-time position at forty hours per week. Mother's hourly wage of $70.87 multiplied by 40 hours resulted in a weekly wage of $2,834.80 and a yearly total of approximately $147,410.00. Trial Court Opinion, 12/30/13, at 3.

[3] Of note, mother presented no evidence that she could not obtain full time employment. Her choice to work part time does not constrain the trial court or this Court to accept that choice as evidence of her earning capacity.

not second-guess the trial court's determination of Mother's earning capacity. **Id.** at 533.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014